

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| OSCAR EDGARDO VELASQUEZ, | ) | |
| Petitioner, | ) | |
| v. | ) | 1:14cv1688 (JCC/TRJ) |
| MARIA TERESA FUNES DE VELASQUEZ, | ) | |
| Respondent. | ) | |

**M E M O R A N D U M  O P I N I O N**

This matter is before the Court on Petitioner Oscar Edgardo Velasquez's ("Petitioner" or "Father") Ex Parte Motion under the Hague Convention for Entry of a Temporary Restraining Order ("TRO") and Application for Warrant Seeking Physical Custody of Child ("the Motion") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure [Dkt. 4.], with a Brief in Support (Pet.'s Br. [Dkt. 5]). For the reasons discussed below, the Court will grant the ex parte Motion in part.

**I. Background**

On December 11, 2014, the Father filed a Verified Complaint and Petition for Return of the Children pursuant to the Convention on the Civil Aspects of International Child

1

Abduction[1] (the "Hague Convention"), which is implemented under the law of the United States through the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011, formerly cited as 42 U.S.C. §§ 11601-11611. (Verified Compl. [Dkt. 1] ¶ 2.) The Verified Complaint and Petition ultimately seeks a final judgment returning Father's children to El Salvador, the place of habitual residence, where an appropriate custody determination can be made. (Id. at 8.)

The Court has jurisdiction over this matter pursuant to 22 U.S.C. § 9003(a), formerly cited as 42 U.S.C. § 11603(a), and 28 U.S.C. § 1331. Venue is proper pursuant to 22 U.S.C. § 9003(b), formerly cited as 42 U.S.C. § 11603(b), and 28 U.S.C. § 1391(b).

On December 15, 2014, the Court held an expedited ex parte hearing.[2] The evidence of record currently before the Court includes the evidence presented by the Father during the ex parte hearing and the Father's Verified Complaint, which establishes the following factual background.

On March 3, 2006, Father and Respondent Maria Teresa Funes De Velasquez ("Respondent" or "Mother") were married in

---

[1] Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 19 I.L.M. 1501 (Oct. 25, 1980), available at http://www.hcch.net/index_en.php?act=conventions.text&cid=24 (last accessed Dec. 11, 2014).

[2] The Court finds that an ex parte hearing under Rule 65(b)(1) of the Federal Rules of Civil Procedure without notice to Mother is necessary to avoid immediate and irreparable harm. Father's attorney properly certified to the Court the reasons why notice should not be required pursuant to Rule 65(b)(1)(A).

Santa Elena, at the Department of Usulutan, in El Salvador. (Verified Compl. ¶ 6.) Two daughters are the product of this marital union: seven-year-old M.D.F. born in 2007, and five-year-old M.A.F. born in 2009 (the "daughters"). (Id. at ¶¶ 7-8.) Until relatively recently, this family of four resided in El Salvador, where the daughters attended school. (Id. at ¶¶ 9-10.)

On November 18, 2013, Father, Mother, and the daughters traveled from El Salvador to the State of Maryland in the United States with a scheduled return date of January 25, 2014. (Verified Compl. ¶ 11.) Unexpectedly, Father had to return to El Salvador earlier than planned without the rest of his family, but he returned to the United States on February 20, 2014 and bought tickets for February 28, 2014 for his family to return to El Salvador. (Id. at ¶¶ 12-13; Ex. F.) On February 27, 2014, Mother advised she was not returning to El Salvador but instead remaining in the United States with the two daughters. (Id. at ¶ 14.) In response, Father called the police, alleging Mother was attempting to kidnap the daughters, but the police treated the incident as a domestic dispute, and Father eventually left the scene and returned to El Salvador without Mother and his two daughters. (Id. at ¶¶ 15-16.) Father left to avoid further altercation but he did not give his consent for the daughters to stay with Mother in the United

States. (Id. at ¶¶ 16, 28.)

Since then, Father attempted to persuade Mother to return the daughters to El Salvador, but learned that Mother wanted to stay in the United States because of a new boyfriend and had no intent to return the daughters to El Salvador. (Verified Compl. ¶¶ 14, 17.) Father later traveled to the United States on three separate occasions to persuade Mother to allow the daughters to return with him to El Salvador, but Mother refused, and remains, with no legal status, in the United States with the daughters and her boyfriend in Manassas, Virginia. (Id. at ¶¶ 18-20; Ex. G.) On August 4, 2014, Father submitted a Request for Return of Children to the United States Department of State through the Spanish Central Authority. (Id. at ¶ 21; Ex. H.)

The Father's documentary evidence establishes the following: he is listed as the father on the daughters' birth certificates (Verified Compl. Exs. B, C); prior to November of 2013, the daughters resided in El Salvador where they attended school (id. Exs. D, E); and Father has not consented to the daughters continued presence in the United States with their Mother and has attempted on numerous occasions to return the daughters to El Salvador (id. Exs. F, G, H). Accordingly, Father seeks the following relief: (1) an immediate TRO prohibiting removal of the daughters, by Mother or any person

acting in concert with Mother, from the Eastern District of Virginia until a hearing on the merits of the Verified Complaint; (2) an expedited preliminary injunction hearing on the merits of the Verified Complaint consolidated with the trial of the action on the merits where the Mother show cause why the daughters should not be returned to El Salvador; and (3) a warrant for physical custody of the daughters that directs the United States Marshal to place the daughters with Father's cousin until final disposition of this matter.

## II. Standard of Review

### A. The Hague Convention

"The Hague Convention seeks to protect children[3] internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as secure protection for rights of access." Maxwell v. Maxwell, 588 F.3d 245, 250 (4th Cir. 2009) (quoting Hague Convention, pmbl., 19 I.L.M. at 1501) (internal quotations omitted). Courts effectuate this intent by "preserv[ing] the status quo[.]" Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001).

To maintain the status quo, "the Court is empowered to take appropriate measures 'to prevent . . . prejudice to

---

[3] The Hague Convention applies to any child under the age of sixteen years who was habitually residing in a Contracting State immediately before the breach of custody or access rights. Hague Convention, art. 4, 19 I.L.M. at 1501.

5

interested parties by taking or causing to be taken provisional measures.'" Alcala v. Hernandez, No. 4:14-CV-4176-RBH, 2014 WL 5506739, at *3 (D.S.C. Oct. 30, 2014) (quoting Hague Convention, art. 7(b)). This Court "is permitted to implement all necessary procedures to prevent the child's further removal or concealment before the final disposition of the petition." Id. (quoting 22 U.S.C. § 9004(a)) (internal quotations omitted). Indeed, federal district courts across the country have used 22 U.S.C § 9004 to take provisional measures to ensure that children are not relocated or concealed prior to completion of the Hague Convention proceedings. Id. (citing cases).

B. TRO

Father's requested relief for such "provisional measures" under 22 U.S.C. § 9004 are "analogous to a temporary restraining order[.]" Id. (citing Dionysopoulou v. Papadoulis, 2010 WL 5394896 (M.D. Fla. Dec. 23, 2010) (citing McCullough v. McCollough, 4 F. Supp. 2d 411, 415 (W.D. Pa. 1998))). Rule 65(b) of the Federal Rules of Civil Procedure governs temporary restraining orders. "The standard for granting either a TRO or a preliminary injunction is the same." Moore v. Kempthorne, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Counsel, 555 U.S. 7, 20 (2008); see also Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009) (citing Winter, 129 S. Ct. at 374), vacated on other grounds, 130 S. Ct. 2371 (2010), reinstated in relevant part, 607 F.3d 355 (4th Cir. 2010).

### III. Analysis

#### A. Temporary Order Restraining Movement of Children

After analyzing the four factors as discussed below, the Court finds that provisional measures are necessary and will therefore enter a TRO to maintain the status quo until trial.

#### 1. Likelihood of Father's Success on the Merits

A plaintiff seeking a TRO must first establish that he is likely to succeed on the merits. Father ultimately seeks the return of his daughters to El Salvador and claims Mother has wrongfully retained the daughters in the Eastern District of Virginia since February 27, 2014 in violation of the Hague Convention. (Verified Compl. ¶¶ 22-28; id. at 8; see also Pet.'s Br. at 7-9.)

Under the Hague Convention, the removal or retention of a child is wrongful where (1) "it is a breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually

7

resident immediately before the removal or retention" and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Hague Convention, art. 3, 19 I.L.M. at 1501. More specifically as applicable here, to prove Mother's retention was "wrongful," Father must establish: (1) the daughters were "habitual residents" of El Salvador at the time of wrongful retention; (2) the wrongful retention breached Father's custody rights under El Salvadorian law; and (3) Father had been exercising his custodial rights at the time of wrongful retention. Miller, 240 F.3d at 398 (citing Hague Convention, art. 3, 19 I.L.M. at 1501); see also 22 U.S.C. § 9003(e)(1)(A).

Here, Father has shown through his Brief in Support and the Verified Complaint and Petition that he is likely to succeed on the merits.

### i. Habitual Residence is El Salvador

The Court finds the daughters were habitual residents of El Salvador at the time Mother wrongfully retained them in the United States on February 27, 2014. Federal courts use a "two-part framework to assist in the habitual residence analysis[,]" a term that was left undefined by the Hague Convention. Maxwell, 588 F.3d at 251. The first question is "whether the parents shared a settled intention to abandon the

former country of residence" and the second question is "whether there was an actual change in geography coupled with the passage of an appreciable period of time, one sufficient for acclimatization by the children to the new environment." Id. (citations omitted).

Here, first, there is no evidence of an intent by both parents to abandon El Salvador as their country of residence. Instead, the family traveled to the United States on November 18, 2013 with an original intent to return to El Salvador on January 25, 2014. (Verified Compl. ¶ 11.) Prior to this, the family lived in El Salvador. (Id. at ¶ 9, Ex. D.) After a "problem arose," Father returned to El Salvador without the family, but then returned to the United States on February 20, 2014 and bought tickets for the family to return to El Salvador on February 28, 2014. (Id. at ¶¶ 12-13, Ex. F.) Father did not consent to Mother's intent to retain the daughters in the United States; thus, there was no shared intent to abandon El Salvador. (Id. at ¶ 14.)

Second, even though there was an actual change in geography because the family traveled from El Salvador to the United States, there is no evidence before the Court to suggest this change was not "coupled with the passage of an appreciable period of time." Maxwell, 588 F.3d at 251. Courts have considered such factors as "school enrollment, participation in

social activities, the length of stay in relative countries, and the child's age to determine the extent of a child's acclimatization to the new country of residence." Id. 588 F.3d at 254. Here, the only evidence before the Court is that the daughters are enrolled in school in El Salvador and they have lived in El Salvador longer than they have in the United States. (Verified Compl. ¶¶ 7-10, Ex. E.) Therefore, the Court cannot find an actual change in geography with the requisite acclimatization.

Accordingly, the evidence now before the Court establishes the daughters were habitual residents of El Salvador at the time of wrongful retention in the United States by Mother.

### ii. Breach of Father's Custody Rights

Next, the Court finds Mother's retention of the daughters in the United States breached Father's custody rights. Custody rights are determined by the law of the habitual residence, in this case El Salvador. See Hague Convention, art. 3, 19 I.L.M. at 1501. The evidence submitted by Father shows he is listed as the father on the birth certificates of both daughters, certified by the Family Register of the Department of Morazan, El Salvador. (Verified Compl. Exs. B, C.); see also Alcala, 2014 WL 5506739, at *5 ("Because Father is listed on the Children's birth certificates, he is presumed to have patria

*potestas* rights over both of the Children.") Under Article 206 and 207 of Title II of the Family Code of El Salvador, "parental authority corresponds to the father and mother jointly." (<u>Id.</u> Ex. I at 3 (translated into English).) Accordingly, without any evidence to the contrary, the Mother's retention of the daughters in the United States breaches Father's custody rights as defined by El Salvadorian law.

### iii. Father Exercised His Custodial Rights

Last, Father attempted to exercise his custodial rights by living with the daughters in El Salvador until their retention in the United States. Father has also attempted to exercise his custodial rights and retrieve the daughters, unsuccessfully, by traveling to the United States on at least three occasions. (Verified Compl. ¶ 18.)

Accordingly, Father has established a likelihood of success on the merits of the Verified Complaint and Petition.

### 2. Likelihood of Irreparable Harm to Father

One purpose of the Hague Convention is "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a) (citing Hague Convention, art. 7(b), 19 I.L.M. at 1502). Based on the facts contained in Father's Verified Complaint and Petition, Mother has already wrongfully retained the daughters in the United States for close

to ten months after Father's numerous attempts to exercise his custodial rights. This suggests to the Court that Mother could possibly seek to remove the daughters from this jurisdiction, or further conceal their whereabouts. Such further action would defeat the purpose of the Hague Convention and frustrate the effort of this Court in resolving the ultimate disposition of the Verified Complaint and Petition. Alcala, 2014 WL 5506739, at *6 (citing McCullough, 4 F. Supp. 2d at 416 ("Were respondent to flee this jurisdiction with the children prior to this court accomplishing a transfer of physical custody, the very purpose of the [Hague] Convention and the ICARA would be defeated. This, by definition, is irreparable harm.") The fact that Mother also has no legal status in the United States increases the Court's awareness to the possibility of additional movement, either throughout the United States or elsewhere. (Verified Compl. ¶ 19.) Therefore, Father has also made the requisite showing of irreparable harm.

### 3. Balance of the Equities

The balance of the equities also weighs in Father's favor. Father is not seeking a permanent custody order from this Court; indeed, he cannot seek such an order. Father only seeks a temporary order restraining the movement of the daughters, until final disposition of this Verified Complaint and Petition, which will only determine whether the daughters

must return to El Salvador or remain in the United States. As such, at this stage, Mother does not stand to lose any custody rights, much less any other permanent rights. See Alcala, 2014 WL 5506739, at *6 (citing Abbott v. Abbott, 560 U.S. 1, 20 (2010) ("Ordering a return remedy does not alter the existing allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the [Hague] Convention's premise that courts in contracting states will make this determination in a responsible manner.") (citations omitted)). This order, if granted, is limited and temporary. Alcala, 2014 WL 5506739, at *6 (citing Antonio v. Bello, No. 04-12794-GG, 2004 WL 1895123 (11th Cir. June 10, 2004) (per curiam) (noting that the irreparable harm by the abducting parent "is not, as Appellant suggests, that she will lose her child. The return order does not affect any change in custody since Appellant is free to accompany the child back to Mexico and assert her custody rights there.")).

Accordingly, the balance of the equities weighs in favor of Father.

### 4. Public Interest

Lastly, the public interest is served by granting an order temporarily restraining the movement of the daughters until final disposition. "The Hague Convention seeks to protect children internationally from the harmful effects of their

wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as secure protection for rights of access." Maxwell, 588 F.3d at 250 (quoting Hague Convention, pmbl., 19 I.L.M. at 1501). Congress implemented and recognized the intent of the Hague Convention by enacting ICARA with the following findings:

> (1) The international abduction or wrongful retention of children is harmful to their well-being.
>
> (2) Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.
>
> (3) International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

22 U.S.C. § 9004(a)(1)-(3). Therefore, in accordance with the Hague Convention's purpose and the findings of Congress under the ICARA, granting the TRO is in the public interest.

To conclude, the four factors discussed above weigh in favor of granting a temporary restraining order that prohibits the removal of the daughters from the Eastern District of Virginia pending a hearing on the merits of the Verified Complaint and Petition. The Court will grant this portion of the ex parte motion, and a TRO will issue to maintain the status quo.

### B. Preliminary Injunction Hearing

The Court will also grant Father's request for a Preliminary Injunction hearing to determine whether the TRO should remain in effect until final disposition, and the Court will set this hearing for a date certain. However, the Court will not consolidate the preliminary injunction hearing with the final trial on the merits, absent consent from Mother. See Alcala, 2014 WL 5506739, at *3 ("The Court anticipates that the Mother will require a reasonable amount of time to prepare for the hearing and retain counsel if desired.").

### C. Warrant for Physical Custody of the Daughters

Lastly, Father asks the Court to issue "a warrant seeking immediate physical custody of the Children, directing any United States Marshal[] or other law enforcement officer to bring the Children before this Court." (Verified Compl. at ¶ 29.) "No court exercising jurisdiction of an action brought under . . . this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. § 9004(b).

Under Va. Code § 20-146.32(A), Father may request that the Court "issue an ex parte order that the child be taken into immediate physical custody if the child is <u>imminently likely to suffer serious physical harm or be removed from this</u>

Commonwealth." (emphasis added). This extraordinary request is typically only granted by federal courts when a custody determination has already been made, or when a custody order was already in effect. See Alcala, 2014 WL 5506739, at *8 (citing cases). As was the case in Alcala, here, there is no prior custody determination and no custody order is in effect; indeed, Father implicitly acknowledges, based on his argument under El Salvadorian law, that both parents share joint custody of the daughters. (Pet.'s Br. at 8 ("No custody order has been entered in El Salvador . . . . [Parental authority, or custody] is exercised by both the father and the mother.").)

Moreover, there is no specific allegation in the Verified Complaint and Petition, or Petitioner's Brief, that the daughters are "imminently likely to suffer serious physical harm or be removed from this Commonwealth." (Id. at 11 ("Petitioner understandably does not have details of his daughters' present health and living conditions[.]").) Mere speculation is an insufficient basis for this Court to order the physical seizure of two minor children. Therefore, the Court will deny Father's request to issue a warrant for physical custody of the daughters.

### IV. Conclusion

For these reasons, the Court will grant in part the Father's Motion for a TRO. The Court will issue a temporary

restraining order prohibiting the removal of the daughters from the Eastern District of Virginia pending a trial on the merits of the Verified Complaint and Petition. The Court will also grant Father's request for a preliminary injunction hearing to determine whether this temporary restraining order shall remain in effect pending trial. The Court will deny Father's request for the issuance of a warrant for physical custody of the daughters.

An appropriate Order will issue.

/s/
James C. Cacheris
United States District Judge

December 15, 2014
Alexandria, Virginia

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE